IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHIPEKA NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:22cv173 |
| ) | |
| DUKE MANOR, et. al., ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff submitted a pro se complaint and application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). (Docket Entries 1, 2.) The Complaint names Duke Manor, General Services Corporation ("GSC"), and Lasalle NC L.L.C. ("Lasalle") as Defendants and requests damages principally stemming from alleged violations of the Truth In Lending Act (TILA), 15 U.S.C. § 1601 et. seq., and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq. (See Docket Entry 2 at 2-5; see also Docket Entry 2-1 ("Affidavit of Truth") at 2-9 (discussing various federal and state statutes, including primarily TILA and FDCPA).) Because Plaintiff seeks to proceed in forma pauperis, the Court must review the Complaint, and "shall dismiss the case . . . if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). For the reasons

that follow, the Court will grant Plaintiff's application to proceed in forma pauperis for the limited purpose of recommending dismissal of this action.

A plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

---

1 Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson, 551 U.S. at 94 (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. Similarly, a court need not accept "bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

For the reasons that follow, the Court should dismiss Plaintiff's federal claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and should dismiss any state claims pursuant to 28 U.S.C. § 1367(a)(3).

## BACKGROUND

In February 2021, Plaintiff entered into a fourteen-month lease with Lasalle and GSC to reside in an apartment at Duke Manor in Durham, North Carolina. (Docket Entry 2-2 at 8.) Lasalle owns and GSC manages the relevant premises. (Id.)[2] Plaintiff appears to have timely paid her rent until November

---

2 The Complaint lists Duke Manor, the name of the leased property, as a Defendant. (Id. at 13 (email to Plaintiff from GSC stating that "Duke Manor Apartments is the name of the place where you reside").) Given the nature of Plaintiff's claims, the action lies against Lasalle and GSC, not Duke Manor. See, e.g., In re Blythe, 413 B.R. 205, 209 (Bankr. E.D. Pa. 2009) (describing TILA claim as "in personam in nature," not in rem); see also Hayes v. Ramsey Cnty. Work House, No. 13CV00885, 2013 WL 2285344, at *2 (D. Minn. May 23, 2013) (dismissing suit because apartment building did not constitute "a cognizable legal entity that has the capacity to be sued"); Schmidt v. Fidelity Nat. Title Ins. Co., No. CIV. 07-00356, 2008 WL 5082860, at *10 (D. Haw. Nov. 26, 2008) ("A suit for damages is not an action in rem or quasi in rem.").

3

2021. (Id. at 15-17.) On November 11, 2021, in response to a request from Plaintiff, Defendant GSC sent her a "copy of [her] lease agreement . . . and a copy of the ledger summary," to identify the source and bases of Plaintiff's "alleged debt." (Id. at 13-14.) Plaintiff responded one week later with a "CEASE AND DESIST NOTICE," wherein she stated her "refus[al] to pay this alleged debt, and . . . demand[] that [Defendants] cease all forms of communication with [her]." (Id. at 1.) Plaintiff also "demand[ed]" that Defendants "[d]irect all previous payments back to [her] in the form of a check." (Id.) In December 2021, Plaintiff sent another letter, stating that she "is not a party to any valid contract or compact with [Defendants]," and warning Defendants that their failure to rebut her assertions would result in "Res Judicata." (Id. at 5-6.) In early January 2022, GSC sent Plaintiff a "Notice of Intent to Evict" due to nonpayment of rent. (Id. at 19.)

Plaintiff now brings this action, comprised of a variety of federal and state claims. First, the Complaint (and attached Affidavit of Truth) alleges that Defendants violated the TILA by "fail[ing] to provide [Plaintiff] information required under TILA" (Docket Entry 2 at 4), failing to "disclose rescission forms" (id.), including "cash" in the "finance charge" (id.), failing to include "[t]he property insurance premium" in the

4

finance charge (id.), "fail[ing] to reflect on statement of an extension of credit and . . . fail[ing] to credit properly a payment or other credit" (Docket Entry 2-1 at 3). The Complaint also contends that Defendants violated the FDCPA by "accus[ing Plaintiff] of owing unverified alleged debt, threaten[ing] to injure [Plaintiff's] consumer report, commit[ing] fraud, false and misleading representation by being more than one business name, harassment, [] severely injur[ing] [Plaintiff], . . . and communicati[ng] without prior consent nor honoring cease and desist . . . ." (Docket Entry 2 at 4; see also Docket Entry 2-1 at 4-7 (discussing FDCPA).) In addition, the Complaint apparently seeks relief under the Consumer Leasing Act, 15 U.S.C. § 1667 et. seq. (id. at 4), several federal criminal statutes (id.), a federal statute (47 U.S.C. § 227) governing the use of telephone advertising (id. at 5), and a federal statute (39 U.S.C. § 3001) governing certain nonmailable matter (Docket Entry 2-1 at 8). Finally, the Complaint alleges Defendant violated several North Carolina statutes (id. at 9), and "committed "identity theft" as well as an "invasion of [Plaintiff's] personal and family privacy" (id. at 8).

## DISCUSSION

As noted above, the Complaint (construed liberally) raises several TILA and FDCPA claims, at least one Consumer Leasing Act

5

claim, two other federal statutory claims, several claims under federal criminal statutes, and four state statutory and common law claims, none of which should proceed.

## I. TILA CLAIMS

The Complaint, as described more fully above, generally alleges that Defendants violated the TILA by providing a deficient lease to Plaintiff. (See Docket Entry 2 at 4.) According to the Complaint, Plaintiff's lease falls within the ambit of the TILA because it constitutes a "consumer credit transaction." (Id.) Congress enacted the TILA "to inform consumers' use of credit by increasing their awareness of credit costs." Gibson v. LTD, Inc., 434 F.3d 275, 280 (4th Cir. 2006); see also 15 U.S.C. § 1601(a) (stating congressional purpose). "By its terms, the TILA applies to credit and personal property leases." Bradley v. Progress Residential Prop. Manager, LLC, No. 3:21CV277, 2021 WL 4761991, at *2 (W.D.N.C. Oct. 12, 2021). The TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f).

A lease for real property, like Plaintiff's, does not constitute a consumer credit transaction because it does not involve credit or personal property. First, the lease does not involve credit because it does not provide for the "defer[ral

6

of] payment of debt." Id.; see also Bradley, 2021 WL 4761991, at *2 ("The TILA explicitly does not apply to leases of real property."); Laramore v. Ritchie Realty Mgmt. Co., No. 03C1333, 2003 WL 22227148, at *1 (N.D. Ill. Sept. 25, 2003) (holding, in context where definition of "credit" mirrors TILA definition, that "[residential] leases are not deferred debt but prepaid advancements of a debt for contemporaneous use"), aff'd, 397 F.3d 544, 547 (7th Cir. 2005) (recognizing that "typical residential lease does not involve a credit transaction . . . [because it] involves a contemporaneous exchange of consideration"). And second, the TILA distinguishes leases for personal property from leases for real property; the TILA applies to the former, not the latter. See 15 U.S.C. § 1667(4) (defining personal property as "any property which is not real property"). Because Plaintiff's residential lease does not involve credit or personal property, it does not constitute a "consumer credit transaction," the TILA does not apply, and the Complaint fails to state a claim thereunder. See Iqbal, 556 U.S. at 678. For that reason, the Court should dismiss Plaintiff's TILA claims. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. FDCPA Claims

The Complaint additionally asserts that Defendants, in seeking to obtain rental payments under the lease (including

those past due), violated the FDCPA. (See generally Docket Entry 2 at 4; Docket Entry 2-1 at 4-7.) The FDCPA exists to address "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692a. It establishes civil liability for debt collectors who violate its provisions, see 15 U.S.C. § 1692k, many of which Plaintiff cited in her Affidavit of Truth (See Docket Entry 2-1 at 4-7).

But, as the name suggests, the FDCPA only applies to "debt collectors," statutorily-defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). As the United States Court of Appeals for the Fourth Circuit has summarized, the FDCPA "defines a debt collector as (1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector." Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 136 (4th Cir. 2016), aff'd, __ U.S. __, 137 S. Ct. 1718 (2017). The FDCPA also exempts from the definition of debt collector "persons collecting or attempting to collect any debt

8

owed to the extent such activity concerns a debt which was not in default at the time it was obtained by such person." Fletcher v. Homecomings Fin. LLC, No. 1:08CV393, 2010 WL 1665265, at *2 (M.D.N.C. Apr. 22, 2010) (quoting 15 U.S.C. § 1692a(6)(F)(iii) (internal brackets and ellipses omitted)). "To simplify, this exclusion means that a person collecting nondefaulted debts on behalf of others is not a debt collector." Henson, 817 F.3d at 136.

Here, the Court should consider Lasalle and GSC separately. Lasalle owns Duke Manor and GSC acts as the managing agent for the premises. (Docket Entry 2-2 at 8.) Neither the Complaint nor its attachments contain any factual matter reflecting that Lasalle, as the premises owner, ever sought to collect rent from Plaintiff (or anyone else). The Complaint therefore fails to establish a basis to label Laselle as "(1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector." Henson, 817 F.3d at 136. Because the Complaint does not "contain sufficient factual matter [regarding Lasalle] to state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678, Plaintiff "fails to state a [FDCPA] claim [against Lasalle] upon which relief may be

9

granted," 28 U.S.C. § 1915(e)(2)(B)(ii).

The Complaint's allegations regarding GSC fare no better. GSC, as the managing agent of Duke Manor, could collect rent payments from tenants (including Plaintiff) prior to default. (Compare Docket Entry 2-2 at 16-17 (digital ledger managed by GSC reflecting Plaintiff's rental payment history, which includes rental payments on the first of each month from March-November 2021), with id. at 19 (notice from GSC assessing late fee on January 6, 2022, for January's past due rent).) Because GSC possessed the right to "collect[] nondefaulted debts on behalf of [Laselle]," Henson, 817 F.3d at 136, the FDCPA expressly exempts GSC from the definition of "debt collector," 15 U.S.C. § 1692a(6)(F)(iii); see also Yatooma v. OP Prop. Mgmt. LP, No. 2:17-CV-02645, 2017 WL 3120259, at *2 (C.D. Cal. July 20, 2017) ("The fact that property owners/managers collect rent from tenants, and in some instances past due rent, as part of their broader duties does not make them debt collectors."); Reynolds v. Gables Residential Servs., Inc., 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006) ("The monies due by [the plaintiff] were payable to [the defendant] not as a debt collector but as [m]anager of the property."); Franceschi v. Mautner-Glick Corp., 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998) (rejecting treatment of rental property owner's agent as debt collector under FDCPA

10

because agent "had not only the right but also the obligation to collect [Plaintiff's] rent before as well as after such debt was 'in default'" (italics omitted)). Because the Complaint lacks allegations supporting treatment of either Laselle or GSC as "debt collectors" within the meaning of the FDCPA, the Court should dismiss Plaintiff's FDCPA claims. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Consumer Leasing Act Claim

Although not entirely clear, the Complaint next appears to allege a violation of and seek relief pursuant to the Consumer Leasing Act. (See Docket Entry 2 at 4 (stating, in "Relief" section, that damages calculation includes "twice the consumer lease"); Docket Entry 2-1 at 4 (alleging that Plaintiff provided "a security deposit . . . to Defendants . . . according to 15 U.S. Code § 1667(5)," a Consumer Leasing Act provision).) Assuming Plaintiff intended to set forth such a claim, it fails because Plaintiff's residential lease does not constitute a consumer lease within the meaning of the Consumer Leasing Act. A consumer lease "means a contract in the form of a lease or bailment for the use of personal property . . . primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1667(1). Personal property "means any property which is ***not real property*** . . . ." 15 U.S.C. § 1667(4) (emphasis added).

11

Because Plaintiff's residential lease covers real property, not personal property, it does not constitute a "consumer lease," the Consumer Leasing Act does not apply, and the Complaint fails to state a claim thereunder. See Iqbal, 556 U.S. at 678. Therefore, to the extent Plaintiff sought to raise a Consumer Leasing Act claim, the Court should dismiss it. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV. 47 U.S.C. § 227

The Complaint also contends that Plaintiff's lease represents an "unsolicited advertisement." (Docket Entry 2 at 5; accord Docket Entry 2-1 at 8.) Section 227, part of the Telephone Consumer Protection Act ("TCPA"), proscribes certain uses of automated telephone equipment in interstate commerce (commonly referred to as "robocalls"). See Barr v. American Ass'n of Pol. Consultants, Inc., __ U.S. __, __, 140 S. Ct. 2335, 2344 (2020). Plaintiff's TCPA claim fails for a variety of reasons, including that: (1) the Complaint cited § 227(a)(5), which sets forth the definition of "unsolicited advertisement" but provides no cause of action, (2) the Complaint makes only the conclusory assertion that a residential lease constitutes an advertisement, which the Court need not accept as true, see Iqbal, 556 U.S. at 678; Nemet Chevrolet, 591 F.3d at 255, and (3) even assuming the Court construed the residential lease as

12

an advertisement, Plaintiff's signature on the lease belies the notion that Defendants sent the lease to her "unsolicited." For these reasons, the Court should dismiss Plaintiff's TCPA claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## V. 39 U.S.C. § 3001

In addition, the Complaint alleges that "Defendants violated 39 U.S. Code § 3001 [by] fail[ing] to provide required notice." (Docket Entry 2-1 at 8.) Title 39 of the United States Code governs the Postal Service and Section 3001 sets forth standards for determining whether certain mailings constitute "nonmailable matter." As relevant here, if a mailing resembles "a bill, invoice, or statement of account due; but . . . constitutes, in fact, a solicitation," the matter "is nonmailable . . . unless" accompanied by "the following notice: 'This is a solicitation for the order of goods or services, or both, and not a bill, invoice, or statement of account due. You are under no obligation to make any payments on account of this offer unless you accept this offer.'" 39 U.S.C. § 3001(d). Subsection 3001(d) does not create a private right of action. See Wisniewski v. Rodale, Inc., 510 F.3d 294, 307 (3d Cir. 2007) (observing that only Subsection 3001(l) falls under provision creating private right of action as to matters addressed in Section 3001). As a result, Plaintiff's claim under this

13

provision fails as a matter of law and the Court should dismiss it. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## VI. Federal Criminal Claims

According to the Complaint, Defendants also violated several criminal statutes by participating in a civil rights conspiracy (Docket Entry 2 at 3; Docket Entry 2-1 at 7), and committing mail fraud (Docket Entry 2 at 3; Docket Entry 2-1 at 8). Criminal laws generally do not provide private causes of action. See Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from a bare criminal statute." (citing Cort v. Ash, 422 U.S. 66, 80 (1975) (internal quotations omitted))). "Unless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute." Tribble v. Reedy, No. 89–6781, 888 F.2d 1337 (table), 1989 WL 126783, at *1 (4th Cir. Oct. 20, 1989).

None of the criminal statutes cited in the Complaint evince any congressional intent to provide a private remedy, much less "clear Congressional intent," id. See 18 U.S.C. §§ 241, 242, 1341. And, although private parties may seek to remedy violations of their civil rights, they must do so under a federal statute Plaintiff neglected to cite, 42 U.S.C. § 1983,

14

and under factual circumstances not present here, see American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999) (holding that, to state viable Section 1983 claim, plaintiff must show that "alleged deprivation [of constitutional right] was committed under color of state law"). Because Plaintiff has failed to show that any criminal statute in her Complaint provides a private remedy, the Court should dismiss the criminal claims. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## VII. State Statutory and Common Law Claims

Finally, the Complaint asserts several purported North Carolina statutory and common law claims, including identity theft and invasion of privacy. (See Docket Entry 2-1 at 8-9.) As discussed above, Plaintiff's federal causes of action cannot proceed because she has failed to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). As a result, the Court should dismiss without prejudice Plaintiff's state law causes of action. See 28 U.S.C. § 1367(c)(3) (permitting district courts to decline to exercise supplemental jurisdiction over state law claims when the court "has dismissed all claims over which it has original jurisdiction").

**IT IS THEREFORE ORDERED** that Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs (Docket Entry 1) is **GRANTED** for the limited purpose of

15

considering this recommendation of dismissal.

**IT IS RECOMMENDED** that Plaintiff's federal claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that her state claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

This the 7th day of November, 2022.

                                      /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                              **United States Magistrate Judge**